Submitted on petitioner's petition for reconsideration filed December 30, 1987, reconsideration granted, former opinion (89 Or App 85, 746 P2d 1169) withdrawn and affirmed March 9, 1988

In the Matter of the Compensation of
Merlyn G. Johnsen, Claimant.

JOHNSEN,
*Petitioner,*

*v.*

HAMILTON ELECTRIC et al,
*Respondents.*

(WCB 83-06970; CA A42318)

751 P2d 246

David C. Force, Eugene, for petition.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this worker's compensation case, claimant petitions for review of our decision dismissing his petition on the ground that Argonaut had not been served with a copy of the petition for review. 89 Or App 85, 746 P2d 1169 (1988). We treat the petition for review as a petition for reconsideration. ORAP 10.10. We conclude that service of the petition on Argonaut's attorney was sufficient under ORS 656.298(3). We withdraw our former opinion and address the merits of the case.

Claimant seeks a determination that he suffers from a compensable asbestos-related lung condition and that annual diagnostic chest x-rays are compensable. From 1956 to 1967, claimant was exposed to asbestos dust nine times while working for employer as an electrician. He began having regular physicals in 1973. In April, 1979, Dr. Williams, his family physician, noticed some abnormalities in claimant's chest x-ray. Because claimant had been suffering several months from a cough and, because of his history of exposure to asbestos, Williams referred claimant to Dr. Turner, a pulmonary specialist. Turner noted, in May, 1979, that claimant's past chest x-rays indicated that, since 1976, his abnormal lung marks had increased. His "impression" was "asymptomatic interstitial lung disease, R/O asbestosis." Claimant had no asbestos fibers in his sputum. Turner thought that claimant's history was consistent with asbestosis and recommended that he have a yearly chest x-ray, because "the incidence of lung tumors is increased in patients exposed to asbestos." Williams at one point interpreted Turner's report to mean that pleural shadows on claimant's lung "might represent asbestosis." In a later report to claimant, he referred to the "former diagnosis of asbestosis," and he reported to SAIF in 1984 that claimant had a "persistent chest x-ray finding which is probably due to asbestosis."

Dr. Hansen, a pulmonary specialist and SAIF's consulting physician, examined claimant and his medical records. He stated that, although x-ray findings in claimant's left lower lung are consistent with asbestos exposure, they are also consistent with other post-inflammatory etiology. Hansen noted that the pleural thickening of the left lower lung had stabilized since 1981. He stated that lung volume appeared essentially

unaffected and that there was nothing to suggest a diffuse interstitial process. Because he concluded that there was no evidence of diffuse or bilateral pulmonary fibrosis, he stated that he could not make a diagnosis of asbestosis.

■ On *de novo* review, we are persuaded by the medical evidence indicating that claimant does not have asbestosis. Williams appeared to have relied on Turner's 1979 report, which, despite Williams' assumption, did not diagnose asbestosis. Hansen, who examined claimant in September, 1986, explained persuasively that the marks on claimant's lung do not unequivocally indicate asbestosis or an interstitial process. We find that there has been no diagnosis of asbestosis and that, although the "findings" on claimant's lung are consistent with a pre-asbestosis condition, he does not have asbestosis. Assuming that what the findings do amount to is related to claimant's employment, however, the question remains whether, in the absence of disability, symptoms or a need for treatment, claimant suffers from an "occupational disease" so as to enable him to recover benefits for reasonable and necessary medical services.

■■ An occupational disease is defined as "any disease or infection which arises out of and in the scope of the employment." ORS 656.802. Diseases are considered injuries under the workers' compensation law, except as otherwise provided in ORS 656.802 to ORS 656.824. ORS 656.804. Claimant seizes upon that to suggest that the definition of "compensable injury" in ORS 656.005(8) is relevant in determining whether there can be a non-disabling occupational disease. That analysis is supported by *Weller v. Union Carbide,* 288 Or 27, 30-31, 36, 602 P2d 259 (1979), where the Supreme Court held that ORS 656.005(8) is pertinent in determining whether workers' compensation benefits are available for a pre-existing condition. ORS 656.005(8)(a) defines "compensable injury," in part, as an accidental injury requiring medical services. A "non-disabling compensable injury" is any injury "which requires medical services only." ORS 656.005(8)(c). We conclude, in view of the Supreme Court's opinion indicating that those definitions are pertinent with regard to occupational diseases, that it is possible to have a non-disabling occupational disease, *i.e.,* one that requires medical services only. However, the definitions contained in ORS 656.005(8) still require that there in fact be an injury, or in this case, a disease.

Here, the condition of claimant's lung is not asbestosis or any other disease. Accordingly, even if the condition is related to his employment, it is not one for which he is entitled to compensation.[1]

Petition for reconsideration granted; former opinion withdrawn; affirmed.

---

[1] We note that an employer may pay for diagnostic procedures without accepting a claim or assuming responsibility for the condition that may ultimately be diagnosed. ORS 656.262(9).