Argued and submitted December 10, 1992, affirmed September 22, 1993

In the Matter of the Compensation of
John Papen, Claimant.

John PAPEN,
*Petitioner,*

*v.*

WILLAMINA LUMBER COMPANY
and Liberty Northwest Insurance Corporation,
*Respondents.*

(90-12952; CA A74507)

859 P2d 1166

Stanley Fields, Salem, argued the cause for petitioner. With him on the brief was Law Office of Michael B. Dye, Salem.

James D. McVittie, Portland, argued the cause and filed the brief for respondents.

Before Richardson, Chief Judge, and Deits and Durham, Judges.

DEITS, J.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board upholding a determination order that offset his preexisting hearing loss in its calculation of the permanent disability award. We affirm.

Claimant has worked continually in lumber mills since 1947, except for the time between 1949 and 1951 when he served in the military. He has a measurable and progressive hearing loss. Until 1980, claimant worked for Champion International, a plywood mill, where he was exposed to high levels of noise. He did not use hearing protection until 1975, when he began using it about 50 percent of the time. In 1976, claimant underwent an audiogram to measure his hearing loss. It revealed that he had 17 percent monaural hearing loss in his right ear and 34.5 percent in his left ear, for a combined binaural loss of 19.18 percent.

Claimant began working for Willamina Lumber Company (employer) in November, 1980. He filed a claim for hearing loss with Champion in February, 1988, which Champion denied. He requested a hearing on Champion's denial and also filed a claim against employer. Champion moved to join employer, and an order of joinder was issued on November 20, 1989. Claimant underwent another audiogram in December, 1989, which revealed a 25 percent monaural hearing loss in his right ear and 40 percent in his left ear, for a combined binaural loss of 26.88 percent. In January, 1990, employer accepted claimant's hearing loss, and claimant withdrew his request for a hearing on Champion's denial. A February, 1990, determination order issued awarding claimant 5.81 percent or 11.16 degrees scheduled permanent disability. The award offset claimant's hearing loss measured in 1976, before he began working for employer. Claimant appealed, the referee upheld the order, and the Board affirmed the referee.

In upholding the determination order, the Board adopted the referee's opinion that

"the Evaluation Section properly applied OAR 436-35-250 (2)(a). The rule is plain and unambiguous. It states that

hearing loss existing before the compensable injury or exposure should be offset. Moreover, the rule is entirely consistent with ORS 656.214(2), which requires a worker to prove that his scheduled permanent disability is 'due to the [compensable] injury.' *See Nomeland v. City of Portland*, [106 Or App 77, 806 P2d 175 (1991)].

"Furthermore, I need not reach claimant's argument that OAR 436-35-250(2)(a) should not be applied to preexisting work exposure. That is, on this record, claimant has not proven that his hearing loss prior to November, 1980, was caused or worsened by his *work* exposure. *See New* ORS 656.802(2) (1990 Oregon Laws (Special Session) Chapter 2, Section 43)."

■ Claimant assigns error to the Board's holding that his preexisting hearing loss may be offset against his present hearing loss in determining his permanent disability award. The pertinent statute is ORS 656.214:

"(2) When permanent partial disability results from an injury, the criteria for the rating of disability shall be the permanent loss of use or function of the injured member *due to the industrial injury.*

"* * * * *

"(g) For partial or complete loss of hearing in both ears, that proportion of 192 degrees which the combined binaural hearing loss bears to normal combined binaural hearing. For the purpose of this paragraph, combined binaural hearing loss shall be calculated by taking seven times the hearing loss in the less damaged ear plus the hearing loss in the more damaged ear and dividing that amount by eight. In the case of individuals with compensable hearing loss involving both ears, either the method of calculation for monaural hearing loss or that for combined binaural hearing loss shall be used, depending upon which allows the greater award of disability." (Emphasis supplied.)

The version of OAR 436-35-250 in effect at the pertinent time read:

"(2) Compensation may be given only for loss of normal hearing which results from an on-the-job injury or exposure. The following will be offset against hearing loss in the claim:

"(a) Hearing loss which existed before this injury or exposure, if adequately documented by pre-employment audiogram."[1]

---

[1] OAR 436-35-250 now provides, in part:

We conclude that the Board's decision is consistent with the above rule as well as with the statute. The rule provides that an offset is allowed for hearing loss "which existed before this injury or exposure, if adequately documented by pre-employment audiogram." Here, the record demonstrates that claimant had diagnosed hearing loss before starting work with employer. The previous condition was measurably and distinctly different, as evidenced by the 1976 audiogram. Moreover, we conclude that the rule is consistent with the statute, which requires a claimant to prove that a scheduled disability is "due to the [compensable] injury." *Nomeland v. City of Portland, supra.*

■    Claimant argues that this is a case of incremental injuries at successive employments and that, under "the last injurious exposure rule," employer is responsible for his aggregate condition. *Bracke v. Baza'r*, 293 Or 239, 646 P2d 1330 (1982). The Board, however, found that "claimant has not proven that his hearing loss prior to November, 1980, was caused or worsened by his *work* exposure" (emphasis in original), and that finding is supported by substantial evidence in the record. Because the last injurious exposure rule is not applied to hold an employer responsible for a non-work-related disability that preexisted the injury, the Board did not err in concluding that employer was only responsible for that measured loss of hearing that occurred during claimant's employment with employer. *Nomeland v. City of Portland, supra*, 106 Or App at 81.

Claimant contends that the Board erred in finding the date of injury for his occupational disease to be April 1, 1987. Claimant argues, relying on *Johnson v. SAIF*, 78 Or App 143, 146, 714 P2d 1098, *rev den* 301 Or 240 (1986), that, in an occupational disease case, the date of injury is the date of last exposure, which he contends was January, 1990. He also argues that, because he is entitled to a redetermination of his

"(2) Compensation may be given only for loss of normal hearing which results from an on-the-job injury or exposure. The following will be offset against hearing loss in the claim:

"(a) Hearing loss which existed before this injury or exposure, if adequately documented by a baseline audiogram obtained within 180 days of assignment to a high noise environment[.]"

award, his award is payable at the rate effective after May 7, 1990.

■    We do not agree with claimant's argument regarding the date of injury. The date of injury in an occupational disease case is either the date of disability or the date when medical treatment is first sought. *Medford Corp. v. Smith*, 110 Or App 486, 488, 823 P2d 441 (1992). *Johnson v. SAIF*, *supra*, relied on by claimant, does not hold otherwise. As we explained in *Brown v. SAIF*, 79 Or App 205, 209, 717 P2d 1289, *rev den* 301 Or 666 (1986), the holding in *Johnson* regarding the time of "injury" was limited to a determination of the applicability of a newly enacted statute:

> "Although we equated 'injury' with exposure for the purpose of determining the applicability of the statute which was enacted after the exposure but before the disability, our decision was explicitly limited to ORS 656.202(2) and cannot be read to hold that, as a general rule, an occupational disease occurs at the time of the exposure which causes the disease. That reading is inconsistent with the wording of the occupational disease law. *See, for example*, ORS 656.807(1) and (4). Our decision in *Johnson* reflected our concern that using the date of disability to determine the law governing the claim would effect a retroactive application of the occupational disease law in the absence of an expression of legislative intent to make the law retroactive. 78 Or App at 148. *Johnson does not offer any support for claimant's argument that exposure constitutes an 'injury' independently of the subsequent development of an occupational disease.*" (Emphasis supplied.)

If claimant's position were the rule, then he would be seeking compensation for exposure after the date he filed his claim, as he was still working for employer after 1989.

We also conclude that the Board's finding that April 1, 1987, was the date of injury is supported by substantial evidence. Claimant did not seek medical treatment until two months after filing his claim against employer. Therefore, we look to his date of disability, or the date he was entitled to compensation. Claimant stated on his 801 form that the date of his injury was April 1, 1987. In its notice of acceptance, employer accepted April 1, 1987, as the date of injury. Nothing in the record indicates that a different date is appropriate.

We also hold that the 1990 amendment to ORS 656.214(2), which increased the rate of compensation, does not apply here because the applicable rate is determined by the date of injury, which the Board correctly determined to be in 1987. *SAIF v. Herron*, 114 Or App 64, 72, 836 P2d 131, *rev den* 315 Or 271 (1992). The Board properly set compensation at the 1987 rate.

Affirmed.